IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 9, 2014 Session

## CHRIS TAVINO v. VICTORIA ASHLEY SPEAR TAVINO

**Appeal from the Chancery Court for Knox County**
**No. 151756-3     Michael W. Moyers, Chancellor**

_____

**No. E2013-02587-COA-R3-CV-FILED-OCTOBER 27, 2014**

_____

This case involves a post-divorce petition to modify the parties' permanent parenting plan as to their minor child and to terminate the child support obligation owed by the father. The parties were divorced in 2002. The original permanent parenting plan designated the mother as the primary residential parent, awarded co-parenting time to the father, and set the father's child support obligation in the amount of $1,158.00 monthly. In April 2011, the father petitioned for a modification of the parenting plan and child support, averring that the oldest child had reached the age of majority and that the youngest child had been residing exclusively with the father since October 2009. In February 2012, the trial court entered an agreed permanent parenting plan designating the father as the primary residential parent and an agreed order terminating the father's wage assignment but reserving the issue of child support. In July 2012, following a settlement conference and a subsequent hearing, the trial court entered another agreed order providing, *inter alia*, that the mother begin paying the father $409.00 monthly in child support. Additionally, the mother was ordered to pay $500.00 monthly toward a total award of $20,057.00 owed to the father, including a child support arrearage of $6,135.00, reimbursement for child support overpayments in the amount of $10,422.00, and $3,500.00 toward the father's attorney's fees. The mother's counsel withdrew representation pursuant to the agreed order. Acting without benefit of counsel, the mother subsequently filed a petition in October 2012, averring that her income had been misrepresented for purposes of calculating her child support obligation. Following a bench hearing, the trial court entered an order in March 2013, finding that the mother had failed to allege a change in circumstances warranting a modification of her ongoing child support obligation. Approximately four months later, the mother, acting through her current counsel, filed a Tennessee Rule of Civil Procedure 60.02 motion to alter or amend the judgment. In addition to requesting that the trial court set aside the July 2012 agreed order, the mother averred that the father was not parenting the minor child properly. Following bench hearings, the trial court dismissed the mother's Rule 60.02 motion, finding, *inter alia*, that the court lacked subject matter jurisdiction over the mother's parenting allegations against

the father and that the parties had properly agreed to entry of the July 2012 order. The mother subsequently filed a motion for recusal of the chancellor in November 2013, which the trial court denied following a hearing in December 2013. The mother appeals. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and W. NEAL MCBRAYER, J., joined.

David A. Lufkin, Sr., Knoxville, Tennessee, for the appellant, Victoria Ashley Spear Tavino.

Lauren G. Strange-Boston, Knoxville, Tennessee, for the appellee, Chris Tavino.

**OPINION**

I. Factual and Procedural Background

The plaintiff, Chris Tavino ("Father"), and the defendant, Victoria Ashley Spear Tavino, ("Mother"), were married twelve years prior to the entry of a final judgment of divorce on October 7, 2002. During the marriage were born two children, a daughter who was ten years old and a son who was seven years old at the time of the divorce judgment. Through the parties' Permanent Parenting Plan concomitantly entered with the divorce decree, the trial court designated Mother as both children's primary residential parent. Father was granted co-parenting time with the children and was obligated to pay Mother $1,158.00 monthly in child support.

More than eight years following entry of the divorce decree, Father filed a "Motion for Entry of New Permanent Parenting Plan and for Child Support Adjustment" on April 28, 2011. The parties' older child had attained the age of majority in July 2010, and Father averred that the parties' minor child ("the Child") had been residing exclusively with him since October 2009. Father attached to his motion a proposed permanent parenting plan that afforded Mother only twelve co-parenting days with the Child per year. On January 27, 2012, Father subsequently filed a motion to terminate his wage assignment for purposes of child support.

On February 2, 2012, the trial court, acting through Magistrate Brenda Lindsay-McDaniel, entered an "Agreed Order to Terminate Father's Child Support Obligation and Wage Assignment for Same." Mother was represented at this time by her former counsel,

William R. Pratt. The trial court subsequently approved and entered an agreed permanent parenting plan on March 5, 2012. This permanent parenting plan, substantively identical to Father's proposed plan, provided Mother with twelve co-parenting days annually and further provided: "The child shall be in Father's care at all times except when Mother and the child desire to spend time together, which Father shall encourage." Father was designated as the primary residential parent, although the parents maintained joint decision-making responsibilities. Pursuant to the permanent parenting plan, the issue of child support was reserved for a determination by the child support magistrate. The respective hearing was set for July 2012.

Prior to the child support hearing date, the trial court entered an Agreed Order on July 23, 2012. Inasmuch as Mother on appeal questions the validity of this Agreed Order, we quote it at length below:

> This cause came on to be heard before the Honorable Michael W. Moyers, Chancellor for the Chancery Court for Knox County, Tennessee, Part I, upon the Motion for Entry of New Permanent Parenting Plan and For Child Support Adjustment filed by [Father], the parties' agreed Permanent Parenting Plan, which was approved by the Court and entered on March 5, 2012, the parties' agreement regarding child support as evidenced by their submission of this Agreed Order, and the entire record in this cause, from all of which the Court finds as follows:
>
> 1. The agreed Permanent Parenting Plan, which was approved by the Court and entered on March 5, 2012, is in the parties' remaining minor child's best interests;
>
> 2. [Mother] is capable of earning at least $15,000 per year. That amount, plus the amount she receives from her interest in various mineral rights, plus the monetary gift she receives from her aunt establish her income for child support purposes at $2,916.67 per month.
>
> 3. Father's income is $7,790.25 per month, from which he pays the premium for the health insurance policy under which the minor child is covered. The child's portion of that premium is $117 per month.
>
> 4. Each year the minor child spends approximately 12 days with Mother and 353 days with Father.

5.  Based on the components set forth in paragraphs 2 through 4 above, Mother's child support obligation for the one remaining minor child is $409 per month, which obligation began in May 2011, the month after Father filed for a child support adjustment. Mother has paid Father no child support since that time and therefore owes him $6,135 for unpaid child support from May 1, 2011, through July 31, 2012.

6.  From May 1, 2011, through January 31, 2012, Father's income continued to be garnished at the rate of $1,158 per month for the child support obligation established for him when the parties divorced. Mother kept those payments and therefore owes Father an additional $10,422.

7.  In addition to the sums set forth in paragraphs 5 and 6 above, the parties agree Mother owes Father $3,500 for attorney fees he incurred in this case, which is also an incident of child support, bringing the total Mother owes Father to $20,057, the unpaid balance of which shall accrue interest at the rate of 12% per annum beginning August 1, 2012.

8.  Mother has agreed to pay a minimum of $500 per month towards said $20,057, in addition to her ongoing child support obligation of $409 per month.

9.  The parties affirmatively acknowledge that no action by them shall be effective to reduce child support after the due date of each payment, and they understand that court approval must be obtained before child support may be reduced, unless such payments are automatically reduced or terminated under the terms of this agreement.

10. Mother has agreed to pay the per diem charged by court reporter . . . for her services at Mother's deposition on July 16, 2012.

    It is, therefore, ORDERED, ADJUDGED and DECREED as follows:

1.  Mother shall pay child support to Father in the amount of $409 per month beginning in August 1, 2012;

2.  Mother shall pay to Father an additional $500 per month beginning August 1, 2012, to retire the $20,057 arrearage she has accrued though July 31, 2012;

-4-

3.     The unpaid balance of said arrearage, plus any ongoing child support payments that are not timely paid, shall accrue interest at the rate of 12% per annum;

4.     If Mother has not completely retired her arrearage by the time the remaining minor child graduates from high school, by which time he will already be 18 years of age, she shall continue to pay support of $909 per month, all of which shall be applied towards the arrearage and any accrued interest, until same is retired in full pursuant to Tenn. Code Ann. § 36-5-101(f)(3).

5.     Mother shall make all child support payments and all payments towards the $20,057 arrearage directly to the Central Child Support Receipting Unit, P.O. Box 305200, Nashville, TN 37229, and shall not receive credit for any payments not made to the Central Child Support Receipting Unit.

6.     Mother shall pay the per diem charged by court reporter . . . .

7.     William R. Pratt, Esq. is hereby relieved as attorney of record for [Mother]; and

8.     The costs of this cause shall be taxed to [Mother] . . . .

Three months following entry of the agreed order, Mother, acting without benefit of counsel, filed a "Petition for Modification of Child Support" on October 15, 2012. Utilizing a form document, Mother pled the following in pertinent part:

COMES NOW the Petitioner and requests this Honorable Court to modify the prior Order of support and would show:
1.     That a substantial and material change of circumstances of the parties has occurred to justify a modification of the prior Order in that: <u>I would like the court to review my income, as it was decided by attorneys that I made more $ than I actually do, therefore I would please request review</u>

(Underlined portion handwritten onto form.) The petition form stated that an income and expense affidavit and prior year's federal tax filing were to be attached, but Mother attached neither to the petition.

Father subsequently filed an answer and a motion to dismiss Mother's petition on December 4, 2012.  Father denied the statement made in Mother's petition "in its entirety" and offered a detailed account of Mother's involvement in setting the amount of her income for child support purposes during a "settlement negotiation" conducted on July 16, 2012. Father attached to his answer and motion a copy of Mother's 2010 federal tax return, as well as copies of Mother's 2010 and 2011 miscellaneous income statements from Marathon Oil, showing annual income derived from oil well royalties in the amounts of $14,525.23 and $16,821.65, respectively.  Father also attached an email communication from Attorney Pratt to Father's counsel, dated July 19, 2012.  The email message stated the following in relevant part:

> My client has authorized to sign the order that you sent me.  Please sign my name and forward me a copy at your pleasure.

On January 29, 2013, the trial court received a letter, addressed to the Chancellor, from Mother, in which she again requested a review of the child support award.  Mother also averred that Father had failed to give the Child adequate guidance and that he had failed to communicate with her "regarding [the Child's] behaviors, arrests, school things etc."  Mother attached a copy of a mental health treatment plan for the Child, dated June 3, 2010.  Mother subsequently sent a second letter to the court the following day with a chart of expenses she claimed to have paid for both children during the time period ranging from January 1, 2009, through May 1, 2010.

Following a hearing conducted on February 6, 2013, at which Father was represented by counsel and Mother proceeded *pro se*, the trial court entered an order on March 7, 2013, dismissing Mother's petition for modification of child support, reserving Father's request for attorney's fees, and taxing costs to Mother.  The court specifically determined that Mother had failed to state a claim upon which relief could be granted because she had failed to allege a "change in circumstances since entry of that [July 2012] Order that would warrant a change in her ongoing child support obligation."

Four months following the trial court's dismissal of Mother's petition, Mother filed a "Motion for Protection and/or Motion to Alter and Amend Order of July 23, 2012 Under Rule 60.02 for Mistake, Inadvertence or Excusable Neglect or Fraud and/or Motion for Entry of New Permanent Parenting Plan" on July 12, 2013.  Acting through her current counsel, David A. Lufkin, Mother averred that the July 23, 2012 agreed order should be set aside because it had been "based on mistake, inadvertence, excusable neglect or fraud."   She also averred that a material change of circumstances had occurred since entry of the order. Mother requested that the trial court set aside the July 23, 2012 order, direct Father to repay

money paid by Mother into the court clerk's account pending further orders, or in the alternative, stay further payment pending appeal.

Mother further alleged in her motion that "[t]he minor child of these parties remains in severe danger, from himself and others, and the Father has refused to arrange critical evaluation of his mental condition or arrange other help for this child." She requested a hearing to determine "what is in the best interest of the child at the earliest opportunity." The trial court conducted a hearing in response to this request on August 7, 2013. Upon questioning by the trial court at the hearing, Mother's counsel confirmed that Mother had not filed a proposed permanent parenting plan and was not seeking a change in residential co-parenting time. The trial court in an order entered August 22, 2013, found that Mother's allegations against Father's parenting constituted a dependency and neglect claim rather than a petition to modify a permanent parenting plan. The trial court accordingly found that it lacked subject matter jurisdiction "over proceedings in which a child is alleged to be dependent and neglected, as exclusive original jurisdiction over such matters lies in the Juvenile Court." In this order, the trial court also reserved for further hearing the issues raised in the remaining portion of Mother's motion.

Father subsequently filed an answer and motion to dismiss Mother's Rule 60.02 motion on August 12, 2013. He averred, *inter alia*, that Mother had failed to state a claim upon which relief could be granted because none of her allegations regarding the July 23, 2012 agreed order constituted the decree's having been granted on the basis of mistake, inadvertence, excusable neglect, or fraud. Father requested attorney's fees and expenses incurred in defending Mother's motion. He also attached a child support worksheet, which had been omitted from the challenged agreed order. Father subsequently amended his answer to assert the additional defense that Rule 60.02 "does not provide for relief from a final judgment on the basis of mistake of law."

Mother responded by filing two motions to strike Father's answer based on her position that Tennessee Rule of Civil Procedure 7.01 does not provide for an answer to a motion as an allowable pleading. Mother also filed a brief in support of her motion on September 9, 2013.

Following a hearing conducted September 10, 2013, the trial court granted Father's motion to dismiss Mother's Rule 60.02 motion and denied Mother's motion to strike Father's answer. In the resultant order entered on September 17, 2013, the trial court also taxed costs to Mother and granted permission to Father's counsel to prepare and file an affidavit of attorney's fees. The court also denied Mother's request to stay her child support obligation or set aside Father's judgment lien pending appeal.

Father filed a motion for attorney's fees and expenses on October 7, 2013. He requested $4,125.00 in fees and expenses incurred in defense of Mother's petition to modify child support and $8,066.00 in fees and expenses incurred in defense of Mother's motion to alter or amend the agreed order. The day before a scheduled hearing on Father's motion for attorney's fees, Mother filed a motion to continue the hearing. Father objected to the motion to continue, and following consideration of oral argument from both parties' counsel, the trial court denied Mother's motion to continue on November 5, 2013. The court proceeded with the hearing on Father's motion for attorney's fees and granted the motion in full, awarding a judgment in favor of Father in the amount of $12,191.00 through its order entered November 7, 2013.

Two weeks later on November 20, 2013, Mother filed a notice of appeal and request for stay pending appeal with this Court. She concomitantly filed a motion with the trial court for contempt against Father and a motion for the Chancellor's recusal. On December 3, 2013, Father filed a response to the motion for recusal, requesting dismissal of the motion. On December 10, 2013, this Court entered an order questioning the finality of the trial court's judgment and denying Mother's request for a stay. The trial court subsequently conducted a hearing on December 17, 2013, on Mother's motion for recusal, which it denied. At this hearing, Mother's counsel announced Mother's withdrawal of the motion for contempt. On January 21, 2014, the trial court entered an order denying Mother's motion for recusal and determining that no further matters were pending between the parties in the trial court. This Court concomitantly entered an order granting Mother permission to proceed with the appeal.

## II. Issues Presented

Mother presents four issues on appeal, which we restate as follows:

1.      Whether the trial court erred by denying Mother's motion filed pursuant to Tennessee Rule of Civil Procedure 60.02.

2.      Whether the trial court erred by failing to consider and protect the best interest of the Child.

3.      Whether the trial court erred by denying Mother's motion for recusal following the Chancellor's allegedly prejudiced handling of the instant action.

4.      Whether the trial court erred by declining to grant a stay pending appeal.

In addition, Father presents the following issue:

5.       Whether Father is entitled to attorney's fees on appeal.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). A trial court's grant or denial of a Tennessee Rule of Civil Procedure 60.02 motion is also reviewed under an abuse of discretion standard. *See Spruce v. Spruce*, 2 S.W.3d 192, 194 (Tenn. Ct. App. 1998) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993)).

## IV. Denial of Rule 60.02 Motion

The gravamen of Mother's argument on appeal is her assertion that the trial court erred by denying the Tennessee Rule of Civil Procedure 60.02 motion because the court improperly approved the July 23, 2012 agreed order. We note as a threshold matter that Father urges this Court to deny Mother relief on this issue because the section of Mother's appellate brief devoted specifically to argument regarding the Rule 60.02 motion is limited to one four-sentence paragraph that includes no citations to the record or to legal authority. *See* Tenn. R. App. P. 27(a)(7); *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 617 (Tenn. 2010) (determining an issue to be waived when the appellant failed to argue the issue or cite any legal authority in support of his position). Although we determine Mother's argument on this issue to be sparse and interspersed within argument devoted to other issues, we exercise our discretion to address her contentions regarding the denial of the Rule 60.02 motion inasmuch as we may glean her arguments from the brief as a whole.

Tennessee Rule of Civil Procedure 60.02 provides in pertinent part:

**60.02. Mistakes – Inadvertence – Excusable Neglect – Fraud, etc. –**

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

"Parties seeking relief pursuant to Tenn. R. Civ. P. 60.02 have the burden of demonstrating that they are entitled to relief." *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 186 (Tenn. Ct. App. 1985).

In her motion for Rule 60.02 relief, Mother averred that the July 23, 2012 agreed order was entered as a result of "mistake, inadvertence or excusable neglect or fraud." Mother in her brief on appeal summarizes the argument made in her Rule 60.02 motion as follows:

Mother succinctly states that the "Agreed Order" must be set aside in that it contains mistakes both of fact and of law, that it contains an illegal withdrawal of counsel, and that it committed a fraud by the Court.

We note at the outset that relief pursuant to Rule 60.02(2) is warranted upon a showing of "fraud . . . misrepresentation, or other conduct <u>of an adverse party</u>" and is therefore not available as redress for actions taken by the moving party's former counsel. *See* Tenn. R. Civ. Pro. 60.02(2) (emphasis added). Mother elsewhere in her brief accuses the trial court of "mistake, inadvertence or fraud" in approving the July 23, 2012 agreed order. Such an accusation of fraud could constitute the basis of a direct appeal as of right, not Rule 60.02 relief. *See* Tenn. R. App. P. 3. Assuming, *arguendo*, that Mother's three allegations of error comprise allegations of mistake, inadvertence, or excusable neglect, we will address each below.

The bases for Mother's Rule 60.02 motion are her contentions that (1) Mother's former counsel was not authorized to approve an order on Mother's behalf when the order also operated to grant his withdrawal of representation; (2) the trial court could not properly grant relief to Father, including awards of arrearage, reimbursement, and attorney's fees, without pleas for such relief having been made specifically in Father's initial petition; and (3) Mother's financial situation was not accurately represented by the agreed order. Father responds to these arguments by asserting that (1) Mother's former counsel continued to represent her until the trial court entered the agreed order that included permission for him to withdraw representation; (2) Father pled for "general relief" in the initial petition, and the parties were free to reach a settlement that included awards of arrearage, reimbursement, and attorney's fees; and (3) Mother's averments regarding her financial situation did not include any substantive changes since entry of the July 23, 2012 agreed order. We conclude that the trial court did not err in denying Mother's Rule 60.02 motion.

In denying Mother's Rule 60.02 motion, the trial court made the following specific findings of fact and conclusions of law in pertinent part:

[T]he Court finds as follows:

1.  That the advice set forth in the Addendum to the opinion in Jarvis v. Jarvis, 664 S.W.2d 964, 967 (Tenn. Ct. App. 1983), does not constitute law that prohibits a court from approving an agreed order permitting an attorney to withdraw from further representing his client;

2.  The parties agreed that [Father] was entitled to the relief granted him in the Agreed Order of July 23, [2012], and [Mother] has provided no legal authority to support her contention that the parties were not free to reach that agreement or that this Court lacked the authority to approve it;

3.  That [Mother] has therefore failed to state a claim upon which this Court can grant her relief, [Father's] Motion to Dismiss should be granted, and the Court will entertain a Motion by [Father] for attorney's fees related to [Mother's] Motion, a portion of which was heard today, and [Mother's] prior Petition to Modify Child Support, the Order from which was entered on March 7, 2013, and reserved the issue of attorney's fees; . . . .

Upon our thorough and careful review of the record, we agree with the trial court that Mother failed to demonstrate that she was entitled to Rule 60.02 relief.

In support of her argument that Mother's former counsel was not authorized to approve an order in which the withdrawal of his future representation was also approved, Mother relies upon an addendum to this Court's decision in *Jarvis v. Jarvis*, 664 S.W.2d 694 (Tenn. Ct. App. 1983), which states:

> Since this is a case of first impression in this jurisdiction on the issue of service of notice on the attorney in an original divorce suit, we think it appropriate to set forth the advice to attorneys by the editor of 62 A.L.R.2d at page 557, where he said:
>
> > "[T]he lesson to be drawn from the cases discussed at this point is that it is advisable for an attorney representing a spouse in a matrimonial action to file, in accordance with local practice, and as soon as the action has resulted in a final judgment no longer subject to appeal, a statement with the court to the effect that his authority to represent the client has terminated. Otherwise the attorney as well as his client run the risk that many years afterward the attorney will be served with notice of a modification proceeding, at a time when his client is no longer a resident of the state and the client's address is unknown to the attorney."

We determine the situation giving rise to the advice put forth in the *Jarvis* addendum to be factually distinguishable from the case at bar. At issue in *Jarvis* was the sufficiency of service of process of a child support modification petition on the husband's former divorce counsel ten months following entry of the divorce judgment when the husband's counsel no longer represented the husband and had no knowledge of his whereabouts. *Id.* at 695-97; *see also Battleson v. Battleson*, No. E2010-00049-COA-R3-CV, 2010 WL 2593926 at *4 (Tenn. Ct. App. June 28, 2010) (noting that the purpose of the advice set forth in *Jarvis* was for attorneys "to avoid the risk of being served with post-judgment pleadings" for clients whom they no longer represent). Mother has focused on the phrase, "no longer subject to appeal," in the *Jarvis* addendum to argue that fraud or a mistake was committed when Mother's former counsel withdrew as part of an agreed order rather than filing a motion to withdraw when the order was no longer subject to appeal. This argument is unavailing. As the trial court noted during the Rule 60.02 hearing, there is nothing to prevent a party's retaining an attorney a second time after entry of an agreed order allowing the attorney to withdraw representation.

Moreover, Mother failed to present any evidence that she was unaware of her former attorney's withdrawal as part of the agreed order or that the trial court had reason to question Mother's approval of the order. In responding to Mother's Rule 60.02 motion, Father's counsel attached an email communication from Mother's former counsel to Father's counsel, dated July 19, 2012, and stating in pertinent part: "My client has authorized to sign the order that you sent me. Please sign my name and forward me a copy at your pleasure." Although Mother's current counsel claims that Mother sent her former attorney an email message instructing him not to sign the agreed order, counsel presented no further proof of such a message. The evidence does not preponderate against the trial court's finding that the withdrawal of Mother's former counsel within the July 23, 2012 agreed order did not constitute a basis of relief pursuant to Rule 60.02.

Mother's second argument regarding this issue is that the trial court lacked authority to enter the July 23, 2012 agreed order because Father had not specifically pled his request for a child support arrearage, reimbursement of the amount overpaid since the filing of his petition to modify child support, and attorney's fees incurred to that point. We note first that "[i]n determining whether or not a judgment is beyond the scope of the pleadings, those pleadings must be given a liberal construction with all reasonable intendments taken in favor of the judgment." *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955). As to the arrearage and reimbursement, we determine that Father's pleading for a modification in child support encompassed a pleading for any arrearage owed by Mother or reimbursement of support he had overpaid from the time of his filing the petition forward. Tennessee Code Annotated § 36-5-101(f)(1) (2014) provides in pertinent part:

> Such judgment [for child support] shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties. If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage, at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support.

Moreover, as the trial court noted, the parties were free to enter an agreement, subject to the trial court's approval, as to all aspects of child support. *See* Tenn. Code Ann. § 36-5-101(j) ("Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to child support."); *see also Silliman v. City of Memphis*, No. W2013-02858-COA-R3-CV, 2014 WL 3016659 at *7 (Tenn. Ct. App. July 2, 2014) ("'Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable

-13-

result to pending litigation.'") (quoting *Henderson v. Wilson*, No. M2009-01591-COA-R3-CV, 2011 WL 683905 at *4 (Tenn. Ct. App. Feb. 25, 2011)).

As to the attorney's fees, Father's prayer for general relief was sufficient to warrant the award of attorney's fees in a child support action, particularly within an agreed order setting forth those fees. *See Deas v. Deas*, 774 S.W.2d 167, 169-70 (Tenn. 1989) (noting that while a specific prayer for attorney's fees is preferable, a prayer for general relief is "legally sufficient" in child support and custody matters) (citing Tenn. Code Ann. 36-5-103(c)). The record contains no indication of misrepresentation to the trial court in this regard.

Finally, Mother argues that the trial court erred by not granting Rule 60.02 relief because her former attorney miscalculated or misrepresented her income. For the purposes of the agreed order, Mother was imputed only with income from minimum wage employment and from her oil well royalties, as reported on her 2010 and 2011 federal tax returns. Even assuming, *arguendo*, that Mother or her former counsel erred in presenting her income for the purposes of the agreed order, such an error could not form the basis for Rule 60.02 relief. *See Spruce*, 2 S.W.3d 195 (explaining that a party's mistake in calculating income based on the child support guidelines represents a party's mistake in applying the law to the facts and cannot form a basis for Rule 60.02 relief). The trial court did not err by denying Mother Rule 60.02 relief from the July 23, 2012 agreed order.

## V. Best Interest of Child

Mother contends that the trial court failed to protect the best interest of the Child when it dismissed the portion of her motion that pertained to Father's parenting of the Child. It is unclear, however, how the trial court could have granted relief concerning Mother's allegations regarding parenting through the grant of this motion. Mother did not propose a modification in residential co-parenting time or in any aspect of the agreed permanent parenting plan entered on March 5, 2012. *See* Tenn. Code Ann. § 36-6-405 (2014) (providing that a proposed parenting plan shall be filed with any petition to modify a permanent parenting plan unless the proposed modification pertains solely to child support). In fact, Mother asked that the trial court direct Father to follow the agreed permanent parenting plan even as she requested a review of the child support awarded in the July 23, 2012 agreed order as it related to the calculation of her income and the arrearage and reimbursement owed Father.

The trial court found that Mother's allegations against Father's parenting of the Child constituted a dependency and neglect claim over which the juvenile court would have sole jurisdiction. We agree. *See* Tenn. Code Ann. § 37-1-103(a)(1) (2014) (providing that juvenile courts have exclusive, original jurisdiction over proceedings in which a child is

alleged to be dependent and neglected); *see also State ex rel. Baker v. Turner*, 562 S.W.2d 435, 437 (Tenn. Ct. App. 1977) (holding that the chancery court's jurisdiction over the question of custody as the subject matter of a previously entered divorce decree "may be suspended . . . by reason of the exercise by the Juvenile Court of the special, exclusive jurisdiction" over delinquent or dependency and neglect proceedings conferred upon it by statute). In addition, Mother failed to present a claim for modification of the permanent parenting plan that would have warranted examination of whether a material change of circumstance affecting the Child's best interest had occurred since entry of the July 23, 2012 agreed order. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C) ("If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest.").

Mother relies upon our Supreme Court's holding in *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013), in support of her argument that the trial court failed to adequately consider the best interest of the Child. In *Armbrister*, our Supreme Court clarified that a parent seeking modification of a residential parenting schedule in a permanent parenting plan is not required to prove that the material change of circumstance giving rise to the request was unanticipated at the time the residential parenting schedule was originally established. *Id.* at 687. We determine *Armbrister* to be inapplicable to the instant action in that Mother never requested a modification of the residential parenting schedule entered with the March 5, 2012 agreed modification of the permanent parenting plan. This issue is without merit.

## VI. Denial of Motion for Recusal

Mother contends that the trial court erred by denying her motion for the Chancellor's recusal. She argues that the Chancellor exhibited prejudice by (1) taking instructions from Father's attorney, (2) unconscionably favoring Father's position, (3) dismissing Mother's *pro se* petition due to a "technical error," (4) not allowing a "simple continuance" of the hearing on Father's motion for attorney's fees, and (5) allowing Mother's former counsel to withdraw via entry of an agreed order. We conclude that the trial court did not abuse its discretion in denying Mother's motion for recusal.

The grant or denial of a motion for recusal "'rests in the sound discretion of the trial judge and should not be reversed on appeal unless the record reveals a clear abuse of that discretion.'" *Moody v. Hutchison*, 247 S.W.3d 187, 202 (Tenn. Ct. App. 2007) (quoting *Irvin v. Johnson*, No. 01-A-01-9708-CV-00427, 1998 WL 382200 at *2 (Tenn. Ct. App. July 10, 1998)) (internal citation omitted). As our Supreme Court has explained:

-15-

Tennessee Supreme Court Rule 10, Canon 3(E)(1) states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."[1] We have held that a recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or "'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis* [*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564-65 [(Tenn. 2001)] (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Even if a judge believes he can be fair and impartial, the judge should disqualify himself when "'the judge's impartiality might be reasonably questioned'" because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)).

*Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009); *see also Malmquist v. Malmquist*, 415 S.W.3d 826, 838-39 (Tenn. Ct. App. 2011). "Adverse rulings and 'the mere fact that a witness takes offense at the court's assessment of the witness,' do not provide grounds for recusal, however, in light of the 'adversarial nature of litigation.'" *Watson v. City of Jackson*, ___ S.W.3d ___, No. W2014-00100-COA-T10B-CV, 2014 WL 575915 at *9 (Tenn. Ct. App. Feb. 13, 2014) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)).

In its order denying Mother's motion for recusal, the trial court incorporated its findings of fact and conclusions of law made following oral arguments of counsel at the motion hearing. The court stated in pertinent part:

Mr. Lufkin has presented the Court with no reason for the Court's [recusal] apart from the personal feelings of his client. He has not alleged any conflict of interest or any other ethical impropriety which would require this court to recuse itself. The only reason for the recusal is that Mr. Lufkin and his client have not been successful thus far in their motions. That is not under any case law that I'm aware of in the State of Tennessee a reason for the Court to recuse itself, and therefore, the Court finds no grounds exist and the Court will not recuse itself.

---

[1]Effective July 1, 2012, this provision is located within Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1).

When questioned by the trial court during the recusal hearing, Mother's counsel acknowledged that he knew of no personal relationship between the Chancellor and either of the parties or either counsel outside of court. Mother's counsel further acknowledged that he knew of no conflict of interest on the part of the Chancellor. Upon our careful and thorough review of the record, including the transcripts of four hearings conducted from August 7, 2013, through December 17, 2013, we discern no indication of prejudice expressed or implied by the Chancellor. *See, e.g., Watson*, ___ S.W.3d at ___, 2014 WL 575915 at *13 ("Although we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] *pro se* post-trial motions, it is well-settled that '[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias.'" (quoting *Ingram v. Sohr*, No. M2012-00782-COA-R3-CV, 2013 WL 3968155 at *31 (Tenn. Ct. App. July 31, 2013)); *Malmquist*, 415 S.W.3d at 840 ("The fact that [the trial court judge] helmed this litigation, without apparent bias, even in the face of difficult litigants and protracted litigation, supports his discretionary decision to remain on the case to see it concluded."). The trial court did not err by denying Mother's motion for recusal.

## VII. Denial of Motion for Stay Pending Appeal

Mother also asserts that the trial court erred by failing to grant a stay of Mother's child support obligation pending appeal, pursuant to Tennessee Rule of Civil Procedure 62.03, which provides:

> **62.03. Relief Pending Appeal.** – When an appeal is taken from an interlocutory or final judgment in actions specified in Rule 62.01 or in actions for alimony or child support, the court in its discretion may suspend relief or grant whatever additional or modified relief is deemed appropriate during the pendency of the appeal and upon such terms as to bond or otherwise as it deems proper to secure the other party.

*See Spruce*, 2 S.W.3d at 194 (explaining that the grant or denial of a Tennessee Rule of Civil Procedure 60.02 motion is reviewed under an abuse of discretion standard).

Following a hearing in which the trial court heard oral argument from both counsel regarding Mother's motion to stay, the trial court found that "under the circumstances of this case," it was "not appropriate" to grant a stay of Mother's child support obligation or set aside Father's judgment lien pending appeal. In support of her assertion regarding this issue, Mother lists financial hardships caused by the child support judgment but does not offer any supporting authority. We determine that Mother has failed to demonstrate any abuse of discretion in the trial court's denial of her motion to stay pending appeal. *See Young v. Young*, 971 S.W.2d 386, 393 (Tenn. Ct. App. 1997) ("The express language of the rule gives

the trial court the discretion to suspend or grant whatever relief is deemed appropriate during the pendency of an appeal in an action for alimony or child support.").

VIII.  Father's Attorney's Fees on Appeal

Father asserts that he should be awarded attorney's fees incurred in defending this appeal pursuant to Tennessee Code Annotated § 27-1-122 (2000), which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

As this Court has stated:

> [I]t is in the sole discretion of this court whether to award attorney's fees on appeal.  As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted).  Upon careful consideration of all of the factors listed above, including the equitable factor of outstanding judgments still owed to Father by Mother, Father's request for attorney's fees on appeal is denied.

IX.  Conclusion

For the reasons stated above, we affirm the judgment of the trial court.  Father's request for an award of attorney's fees on appeal is denied.  This case is remanded to the trial court for enforcement of the judgment and collection of costs below.  Costs on appeal are taxed to the appellant, Victoria Ashley Spear Tavino.

_____
THOMAS R. FRIERSON, II, JUDGE